**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **T.B.** *a minor, by her next friend and parent,* | ) | CIVIL ACTION NO. 15-606 |
| *T.B.,* | ) | |
| | ) | JUDGE JOY FLOWERS CONTI |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **NEW KENSINGTON-ARNOLD** | ) | |
| **SCHOOL DISTRICT.** | ) | |
| | ) | |
| Defendant. | ) | |

Conti, Chief District Judge.

## OPINION

### I. INTRODUCTION

In this civil action, plaintiff, T.B., a minor by her next friend and parent ("Plaintiff"),[1] a minor student at the defendant New Kensington Arnold School District (the "School District" or "Defendant"), brings claims alleging a hostile educational environment under Title IX of the Education Amendments Act of 1972, 20 U.S.C.A. § 1681, et seq. Plaintiff avers that fellow students sexually harassed her, and that the School District, despite repeated notifications, failed to adequately address the offending conduct. Defendant filed a motion for summary judgment, along with a related motion to strike a declaration that plaintiff submitted in opposition to summary judgment. For the following reasons, both of Defendant's motions will be denied. Each motion will be addressed.

### II. MOTION TO STRIKE

---

[1] For ease of reference, "Plaintiff," as used herein, refers to the minor Plaintiff unless otherwise specified.

As a threshold matter, Defendant moves to strike Plaintiff's declaration submitted in opposition to summary judgment. Defendant contends that the declaration contradicts Plaintiff's prior testimony, and that the document constitutes a sham affidavit; Defendant further challenges the statement as unsworn. An unsworn declaration, however, is permissible at the summary judgment stage if it conforms to the requirement that declarant states that its contents are true, subject to penalty of perjury. Fed. R. Civ. P. 56(c); 28 U.S.C.S. § 1746. Plaintiff's challenged declaration bears the required statement.

"A sham affidavit is a contradictory affidavit that indicates only that the affiant cannot maintain a consistent story or is willing to offer a statement solely for the purpose of defeating summary judgment." Jiminez v. All Am. Rathskeller, Inc., 503 F.3d 247, 253 (3d Cir. 2007). Under the sham affidavit doctrine, "if it is clear that an affidavit is offered solely for the purpose of defeating summary judgment, it is proper for the trial judge to conclude that no reasonable jury could accord that affidavit evidentiary weight…." Real v. Dunkle, 652 F. App'x 82 (3d Cir. 2016).

The Court of Appeals for the Third Circuit has recognized that not all contradictory affidavits are necessarily shams. Jimenez, 503 F. 3d at 254. Therefore, "[d]isregarding statements in an affidavit is appropriate on 'clear and extreme facts' . . . when the affidavit is 'flatly contradictory' to the prior testimony . . . ." Hickton v. Enterprise Rent-A-Car Co., MDL No. 2056, 2012 U.S. Dist. LEXIS 136252, at *30 (W.D.Pa. Sept. 24, 2012) (quoting Coleman v. Cerski, No. 3:04-cv-1423, 2007 U.S. Dist. LEXIS 74347, at *5 (M.D. Pa. Oct. 4, 2007)). "When deposition testimony is ambiguous or incomplete, subsequent affidavits may be provided to clarify the testimony and will not be discarded as sham documents." Id. The court is to apply a "flexible approach" when determining whether to apply the sham affidavit doctrine. Kline v.

Zimmer Holdings, Inc., No. 13-513, 2015 U.S. Dist. LEXIS 87440, at **11-12 (W.D. Pa. July 6, 2015) (quoting Jimenez, 503 F. 3d 247 at 253).

Here, Defendant points to several purported inconsistencies between Plaintiff's affidavit and her prior testimony. For example, Defendant argues that Plaintiff's affidavit states that another student, identified here as L, created the Facebook post; but that in her deposition, Plaintiff testified that Plaintiff had never seen the post. Defendant argues that Plaintiff previously testified that the post was never viewed in the school setting, but her affidavit states that other students discussed the post in class. Defendant objects that Plaintiff's affidavits identify particular students as harassers; in her deposition, she said "everybody" harassed her. In these respects, the affidavit does not flatly contradict Plaintiff's prior testimony. Instead, it clarifies or elaborates upon that testimony. The variations to which Defendant points, therefore, do not suggest that Plaintiff cannot maintain a consistent story, or that she is willing to offer a statement solely for the purpose of defeating summary judgment. The affidavit will not be discarded as a sham.

Defendant also objects that Plaintiff's declaration contains hearsay. Defendant presumably refers to Plaintiff's declaration that other students told her that a student, identified here as S, said that Plaintiff "fucked the entire football team." Plaintiff contends that the statements would not be offered to prove the truth of her involvement with the football team, but to prove that the statements were made. In any event, an evidentiary ruling need not issue at this point. A nonmoving party need not "produce evidence in a form that would be admissible at trial in order to avoid summary judgment." Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). Instead, the evidence may be considered, if "it is likely that the information can be reduced to admissible evidence at trial." Straka v. Comcast Cable, 897 F. Supp. 2d 346, 360 (W.D. Pa.

2012). At this juncture, Plaintiff suggests that she has both the intention and the ability to produce direct testimony on the matters at issue. For these reasons, the motion to strike will be denied.

### III. MOTION FOR SUMMARY JUDGMENT

#### A. APPLICABLE STANDARDS

The Federal Rules of Civil Procedure provide that summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's case, and for which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 322.

The moving party bears the initial burden of identifying evidence that demonstrates the absence of a genuine issue of material fact. Id. at 323; Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1080 (3d Cir. 1996). Once that burden has been met, the nonmoving party must identify "specific facts showing that there is a genuine issue for trial," or the factual record will be taken as presented by the moving party, and judgment will be entered as a matter of law. Matsushita Elec. Indus. Corp. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). An issue is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251 (1986). In assessing the record, a court must view all facts in the light most favorable to the nonmoving party, and must draw all reasonable inferences and resolve all doubts in that party's favor. Hugh v. Butler County Family YMCA, 418 F.3d 265, 266 (3d Cir. 2005).

4

**B. FACTS**

This case, like many of its ilk, involves conflicting accounts of significant events. Rather than recounting the facts in full from the outset, this recitation of facts will be limited to those that provide the necessary background. Disputed matters that form the bases for this court's decisions are more specifically identified infra, in the context of each pertinent discussion of applicable law.

At the time of the events giving rise to this litigation, Plaintiff was a student within the School District. Plaintiff's allegations of harassment span her seventh and eighth grade school years, from September 2013 to June 2014, and then from September 2014 to June 2015. Although the parties dispute several details underlying Plaintiff's school disciplinary record, it is undisputed that the record reflects Plaintiff's involvement in physical and verbal altercations with other students and staff. Combined Concise Statement of Material Facts ("C.C.S.") ¶¶27-32.[2]

In April 2014, the spring of her seventh grade year, Plaintiff asserts that she was told that a fellow student, L, posted on Facebook that Plaintiff was a "whore and a slut," that her vagina smelled, and that she engaged in oral sex with another female student. C.C.S. ¶33; Plaintiff's Appendix ("P.A.") at 5, 16; Defendant's Appendix ("D.A.") at 146.[3] Plaintiff did not see the post. C.C.S. ¶36. Plaintiff testified that the post was shared by other students, and that L and others began to call Plaintiff derogatory names at school, including "slut," "whore," and "fish pussy." C.C.S. ¶¶33, 171. Plaintiff submits that L called her names "like every day." D.A. at

---

[2] Citations to the Combined Concise Statement encompass both the stated facts, and the parties' responses to each cited paragraph.
[3] The pages of Defendant's Appendix are marked, in the record, with the designation "A." In this opinion, to make clear that citations refer to Defendant's submission, the Appendix is designated "Defendant's Appendix" or "D.A."

229. In addition to L, Plaintiff identified two other female students, S and K, as participating in the alleged harassment, and also stated that other students called her derogatory and sexually explicit names. C.C.S. ¶¶34, 38, 39. Plaintiff testified that in the fall of her eighth grade year, S started a rumor that Plaintiff had sex with the entire football team. C.C.S. ¶¶55, 56, 167, 168. Plaintiff testified that L continued to spread rumors about her and use sexually hostile terms during Plaintiff's eighth grade year. D.A. at 181, 219, 230. According to Plaintiff's testimony, offensive and derogatory statements and rumors were made, or spread, to and amongst students in other schools. D.A. at 163-64.

Although the parties disagree about who instigated the confrontation, it is undisputed that a physical and verbal altercation ensued between L and Plaintiff at school. C.C.S ¶¶47-52, 161-64. Thereafter, in December of her eighth grade year, Plaintiff was removed from school, via expulsion or voluntary agreement. C.C.S. ¶99. She was ultimately placed in an alternative education program. C.C.S. ¶99. Plaintiff testified that while she was in alternative placement, boys would throw things at her, call her names such as "bitch," and make statements such as "I want to have sex with you," and "I would like to have oral sex with you."[4] C.C.S. ¶125; D.A. at 232a-234. During Plaintiff's eighth grade year, she was issued a citation for harassment, stemming from an encounter with L. C.C.S. ¶57. There is evidence regarding other negative encounters between Plaintiff and teachers and other students, several details of which are disputed. C.C.S. ¶¶86-94, 102-104, 112-13.

At the time of pertinent events, the following school personnel held the noted positions: Tierra LaPrade Weaver ("Weaver") was Plaintiff's guidance counselor; John Pallone ("Pallone") was the District Superintendent; Jon Banko ("Banko") was Acting Principal/Assistant

---

[4] Included in Defendant's appendix is Plaintiff's testimony that the boys "said they were going to stick pencils in [her] vagina" and "they wanted to…just have sex with me every day...." She testified that the boys would try to touch "my butt or … my boobs and stuff." D.A. at 234.

Superintendent; and Todd Kutchak ("Kutchak") and Jeff Thimons ("Thimons") were Assistant Principals. C.C.S. ¶¶6-8, 10, 13. It appears that Joe Locke ("Locke") was not an employee of Defendant, but was assigned the role of School Resource Officer pursuant to a grant. D.A. at 110, 508-509, 514.

Plaintiff recalls reporting the name calling to, inter alia, both Weaver and Kutchak. C.C.S. ¶41. She testified that she reported the name calling to school personnel 10 or 11 times during her seventh grade year. D.A. at 229. It is undisputed that Plaintiff's mother spoke to the Kutchak about the Facebook post, and he said that he would "monitor the situation." C.C.S. ¶¶45, 156-57, 160. At that time, Kutchak took the position that he was unable to take action, because the post was not created at school. C.C.S. ¶¶46, 158. Plaintiff's mother testified that she called the school "well over 15 times" to report harassment; Defendant disputes this assertion. C.C.S. ¶183. Plaintiff's parent stated that she spoke with Kutchak at a football game at the beginning of Plaintiff's eighth grade year, and informed him that L. called Plaintiff derogatory names; he told her not to worry. C.C.S. ¶¶174-76. She says, and Kutchak disputes, that she called him a week or less afterwards to inform him that the harassment continued. D.A. at 256-57.

The record reflects several e-mail communications between Plaintiff's parent and school officials during the subject school year, touching on parental concerns about Plaintiff's situation and the conduct of other students toward Plaintiff. By way of example, the record contains an e-mail dated November 19, 2014, from Plaintiff's parent to Locke, and carbon copied to Banko and Pallone:

> I have told multiple people in the position of authority (Lorrie and Mr. Kuthchak) that L is bulling my child and the only response that I have rec'd thus far is "She's not worth it" and "She is going to be gone soon". This child has posted foul and demeaning things about [Plaintiff] on Facebook and when they are anywhere

around eachother [Plaintiff] is call horrible names. [Plaintiff] Reported to Lorrie that L started a rumor and posted on FaceBook that [Plaintiff] allowed L to perform oral sex on her and because of the smell of her vagina, [Plaintiff] is now mad. … .

D.A. at 22, 26.[5]

On the same day, Banko forwarded the e-mail to Locke and Kutchak, stating, "Joe & Todd, What is going on with this?" C.C.S. ¶71. Locke replied to Banko, "Ok got it thanks I'll look into it." C.C.S. ¶72; D.A. at 28. Locke responded to Plaintiff's parent the following day, "ok got the e-mail…thanks I'll look into it and bring it all up at magistrates…." C.C.S. ¶73; D.A. at 30. The record contains an e-mail dated December 15, 2014, from Pallone to Plaintiff's parent, on a thread including Plaintiff's parent's November 19 e-mail, stating, "I just found your e-mail message – it got sent to my spam folder." D.A. at 33. In an e-mail dated February 27, 2015, Plaintiff's parent wrote, "I have some serious concerns not only about [Plaintiff's] education but also her safety on the bus as she is the only female that rides most days and some of the things she reports to me is clearly sexual harassment to say the least." D.A. at 35.

The record contains an e-mail, this time from Plaintiff's parent to Thimons, dated May 8, 2015. The e-mail states that Plaintiff reported to her parent that "the boys are touching her in places that she should not be touched. She told me that even when the teacher try to intervene and tell them stop and not to touch her that the boys still persist." D.A. at 56. In response, Thimons spoke to teachers and students, and determined that Plaintiff's reports were not credible. C.C.S. ¶133-34. Thimons testified that he attempted to return phone calls from Plaintiff's parent, but that the phone was out of service; Plaintiff's parent states that her phone was never out of service at that time. C.C.S. ¶¶131-32. Thimons told Plaintiff to come to him if

---

[5]Where the text of e-mails is quoted verbatim, spelling and grammatical errors appear in the original texts.

she was uncomfortable in her alternative classroom.  C.C.S. ¶137.  An aide was placed on the bus.  C.C.S. ¶132.

## C.  DEFENDANT'S MOTION

### 1.  "On the basis of sex"

Title IX provides that "no person . . . shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance . . . ." 20 U.S.C. § 1681(a).  A Title IX plaintiff can demonstrate discrimination "on the basis of sex" by showing, for example, explicit or implicit sexual proposals, or that the conduct was motivated by sexual desire, or that the alleged harasser employed sex-specific and derogatory terms that made it clear that the harasser was motivated by general hostility to one sex.  Oncale v. Sundowner Offshore Servs., 523 U.S. 75, 80 (1998).

The kernel of Defendant's argument is that Plaintiff cannot prove that she was harassed "on the basis of sex," because she was subjected to mere name calling that involved terms commonly employed among Plaintiff's peers.  That situation, it contends, is insufficient to support a Title IX claim.[6]   It is true that "in the school setting, students often engage in insults, banter, teasing, shoving, pushing, and gender specific conduct that is upsetting to the students subjected to it.  Damages are not available for simple acts of teasing and name-calling among school children, however, even where these comments target differences in gender."  Davis v. Monroe Cnty. Bd. of Educ., 526 U.S. 629, 651 (1999).  Accordingly, "[c]ourts have repeatedly held that forms of abuse utilizing gendered or sexual language do not, by their use of such

---

[6] Defendant's tangential arguments may be summarily dismissed.  Evidence that Plaintiff used sexually charged and degrading words herself, or that students her age commonly use those words, does not nullify the use of those terms against her if sufficient evidence exists regarding the elements of a Title IX claim.  The facts must be viewed in the light most favorable to Plainiff.

language alone, constitute discrimination on the basis of gender." Eilenfeldt v. United C.U.S.D. #304 Bd. of Educ., 84 F. Supp. 3d 834 (C.D. Ill. 2015).

It is well settled that "[w]hether gender-oriented conduct rises to the level of actionable harassment . . . depends on a constellation of surrounding circumstances, expectations, and relationships, including, but not limited to, the ages of the harasser and the victim and the number of individuals involved." Davis, 526 U.S. at 651. As other courts have recognized, "gender derogatory terms" such as "bitch" and "whore" are "intensely degrading to women." Cf. Burch v. Young Harris College, No. 2:13-cv-64, 2013 U.S. Dist. LEXIS 190498, at *21 (N.D. Ga. Oct. 9, 2013). As a result, the use of offensive, gendered words "can be strong evidence that the harassment at issue is on the basis of sex." Doe v. Galster, 768 F.3d 611, 617 (7th Cir 2014). Discrimination based on the failure to conform to gender stereotypes, although difficult to distinguish from sexual orientation discrimination, may constitute discrimination on the basis of sex. See Riccio v. New Haven Bd. of Educ., 467 F. Supp. 2d 219, 226 (D. Conn. 2006).[7] This court has recognized that asking another student to perform sexual acts "certainly can be considered sexually harassing." Doe v. North Allegheny Sch. Dist., No. 2:08-cv-1383, 2011 U.S. Dist. LEXIS 93551, at *23 (W.D. Pa. Aug. 22, 2011).

Cases involving peer-on-peer sexual harassment often require courts to engage in delicate line-drawing between actionable and nonactionable conduct. True to form, the proper delineation in the case at bar is far from clear. The facts, however, must be viewed in the light most favorable to Plaintiff, and as a whole. The constellation of facts presented here include offensive and gender-derogatory name calling, including references fairly read as targeting a

---

[7] Defendant, in support of its motion, points out that the rumor about Plaintiff being involved in a same-sex relationship was not based in fact. "A plaintiff's 'actual' sexual orientation is irrelevant to a Title IX … claim because it is the biased mind of the alleged discriminator that is the focus of the analysis." Videckis v. Pepperdine Univ., 150 F. Supp. 3d 1151, 1159-60 (C.D. Cal. 2015). Plaintiff not being involved in a same-sex relationship further removes this case from the realm of nonactionable sexual orientation discrimination.

failure to conform to gender norms and references to Plaintiff's genitalia and other comments fairly read as explicitly sexual propositions. Indeed, nearly every comment that other students reportedly made to Plaintiff was gendered or sexually loaded. Despite Plaintiff's acknowledgement that offensive terms are sometimes used in jest, a jury may reasonably view the constellation of facts as amounting to more than "simple acts of teasing." The court must conclude that a reasonable jury could find that Plaintiff was harassed "on the basis of sex," and Defendant's motion must be denied to that extent.

### 2. Notice

Defendant argues that it did not have actual knowledge of the harassment. In particular, Defendant focuses on its employees' testimony that they were unaware of any threat to Plaintiff, and that the Facebook post occurred outside of its control, and on its own characterization and interpretation of e-mails sent by Plaintiff's parents.

"Actual notice" or "actual knowledge" exists when an "appropriate person" "knows the underlying facts, indicating sufficiently substantial danger to students, and was therefore aware of the danger." Bostic v. Smyrna Sch. Dist., 418 F.3d 355, 361 (3d Cir. 2005). As Defendant states, the notice requirement "does not set the bar so high that a school district is not put on notice until it receives a clearly credible report of sexual abuse from the plaintiff-student." Escue v. Northern OK College, 450 F.3d 1146, 1154 (10th Cir. 2006). "'[T]he institution must have possessed enough knowledge of the harassment that it reasonably could have responded with remedial measures to address the kind of harassment upon which plaintiff's legal claim is based.'" Staehling v. Metropolitan Gov't of Nashville, No. 3:07-0797, 2008 U.S. Dist. LEXIS 91519, at * 10 (M.D. Tenn Sept. 12, 2008).

Defendant's arguments do not acknowledge the disputed testimony of both Plaintiff and her parent that they spoke with school officials multiple times regarding the harassment that Plaintiff claims to have experienced. Although the parties disagree about the substance and frequency of reports from Plaintiff and her parents, Defendant acknowledges and describes three instances of relevant contact with school personnel.[8] Plaintiff submitted several e-mails, the sending and receipt of which do not appear to be disputed. These include a November 19, 2014 e-mail to Locke, reporting the content of the Facebook post and spreading of rumors; a February 27, 2015 e-mail to Banko regarding concerns about safety on the bus and sexual harassment; and the May 8, 2015 e-mail to Thimons, in which Plaintiff's parent advised that Plaintiff was being touched, inappropriately, by male students. D.A. at 22-30, 35, 56. Defendant attempts to dilute these e-mails by characterizing them as no more than a parent's effort "to defend her child," or "to press the School District for a change along with accusations that the [alternative] room was too cold." Defendant's Brief in Support of Motion for Summary Judgment at 18. A reasonable jury could certainly view them as such, but also could view them as notice of harassing conduct.

That the Facebook post was created and viewed off school property does not negate Plaintiff's numerous purported reports to Defendant of other objectionable conduct occurring on school grounds. Likewise, school officials' testimony that they were unaware of any threat to Plaintiff is not dispositive under the surrounding circumstances of this case. Given extant testimony regarding the nature, frequency, and duration of the peer conduct at issue, and the disputed evidence regarding the nature and frequency of reports to school officials, a reasonable

---

[8] In particular, Defendant acknowledges that Plaintiff made Kutchak aware of the Facebook post, and he indicated that he could not exercise control over that post but would monitor the situation; Plaintiff's parent sent an e-mail to Locke, on which Banko and Pallone were carbon copied, and Locke responded to the parent that he would look into it; and Plaintiff's parent complained to Thimons regarding other students' behavior toward Plaintiff on the bus and in the alternative education classroom. Indeed, Defendant's position -- that when it received notice, it responded appropriately – implicitly acknowledges that it was, at some point, notified of at least some of the facts underlying Plaintiff's allegations.

jury could conclude that appropriate persons were made aware of underlying facts indicating the substantial danger that Plaintiff was being, or would be, sexually harassed. Defendant's motion in that respect will be denied.

### 3. Deliberate Indifference

Next, Defendant argues that it is entitled to summary judgment because Plaintiff cannot establish that it acted with deliberate indifference. In so doing, it focuses on Thimons' receipt of notice of Plaintiff's complaints about her bus and alternative placement classroom, speaking with teachers and finding that the complaints were not credible. Thimons advised Plaintiff that she could come to speak with him if she felt uncomfortable and assigned her a bus aide.

A school district is deliberately indifferent when it "is advised of a Title IX violation [and] refuses to take action." Gebser v. Lago Vista Indep. Sch. Dist., 524 U.S. 274, 290 (1998). The inquiry requires that school administrators respond to known peer harassment in a manner that is not "clearly unreasonable in light of the known circumstances." Davis, 526 U.S. at 648. The deliberate indifference standard sets a high bar for a plaintiff seeking to recover under Title IX. Galster, 768 F.3d at 619. "This is an exacting and strict standard requiring that the official disregard a known or obvious consequence of his action or inaction. Therefore, the appropriate remedial action necessarily depends on 'the particular facts of the case - the severity and persistence of the harassment, and the effectiveness of any initial remedial steps.'" Bernard v. E. Stroudsburg Univ., N2014 U.S. Dist. LEXIS 52091, at *45 (M.D. Pa. Apr. 14, 2014). [9]

Here, Defendant's "deliberate indifference" argument focuses on the adequacy of Thimons' response to Plaintiff's complaints in 2015, which Defendant acknowledges concerned

---

[9] Perhaps pertinent to the adequacy of Defendant's conduct, the parties refer to Defendant's sexual harassment policies. The parties' submissions in that respect are material neither to Defendant's argument nor the decision today. It is, however, noteworthy that while such policies are relevant, "the failure to follow sexual harassment … procedures does not prove deliberate indifference under Title IX." Doe v. Board of Educ., 982 F. Supp. 2d 641, 657 (D. Md. 2013).

"conduct which would be considered sexual harassment if found unwelcome."[10]  This focus,

however, utterly disregards testimony regarding reports and complaints of potentially harassing

conduct, which are alleged to have occurred at school and well before Thimons' actions in 2015.

There is evidence that Kutchak said that he would monitor the situation, for example, and that

Locke said he would look into it, but there is no evidence of corresponding action.  Whether the

school officials' conduct was reasonable under the circumstances is not sufficiently clear to

entitle Defendant to summary judgment.  A reasonable jury could conclude that during the

relevant time period, which spanned two school years, Defendant's overall response to the

situation was clearly unreasonable.  Therefore, Defendant's motion will be denied.

### 4. Access to Education

Defendant argues that Plaintiff was not denied access to education, because the alleged

harassment was not sufficiently severe, pervasive, and offensive.   Defendant points out that

Plaintiff was placed in an alternative education program because of her own misconduct, and not

because of harassment.

"[I]n the context of student-on-student harassment, damages are available only where the

behavior is so severe, pervasive, and objectively offensive that it denies its victims the equal

access to education that Title IX is designed to protect." Davis, 526 U.S. at 652.  In assessing the

severity of conduct, "the situation needs to be viewed as a whole." Riccio, 467 F. Supp. 2d at

227.  In that regard, courts considering Title IX harassment claims have held that comments

occurring bi-weekly, or eight to fifteen times over the course of a semester, raised a triable issue

---

[10] Perhaps related to Defendant's caveat regarding whether the alleged harassment was welcome, Defendant submits a May 12, 2015 e-mail from a teacher, Katie LaCava ("LaCava"), to Thimons. D.A.at. 435.  In the e-mail, LaCava described "a little of what I see in the classroom."  She stated that Plaintiff tended to sit around boys more than the one other girl in the class; tried to "play hit" the boys, or sit closely to them, and wore clothes that "are very tight or that show her undergarments." Id. The teacher continued to describe Plaintiff's clothing in detail, including a recitation of Plaintiff's stretch pants, tight-fitting shirt, and tank top that showed the "her leopard print bra…." Id. Defendant's purpose in submitting this e-mail is unclear, however, as it does not argue that Plaintiff's clothing or behavior invited or caused the boys' conduct.

regarding severity and pervasiveness.  Fennell v. Marion Indep. Sch. Dist., 804 F.3d 398, 409 (5th Cir. 2015).  A plaintiff is not required to show physical exclusion from school to meet this requirement.  Davis, 651.  Instead, a "denial of access to education" encompasses a "concrete, negative effect" on the victim's access to education.  Davis, 526 U.S. at 633.  It has been held that "relatively moderate ill effects following sexual harassment events" may suffice.  T.Z. v. City of New York, 634 F. Supp. 2d 263, 273 (E.D.N.Y. 2009).  Indeed,

> …even where a Title IX plaintiff's 'academic performance does not appear to have suffered' during the alleged sexual harassment but the harassment 'simply created a disparately hostile educational environment relative to her peers,' the issue of whether the harassment deprived the plaintiff of educational opportunities and benefits is one for the trier of fact.

Doe ex rel. A.N. v. E. Haven Bd. of Educ., 200 F. App'x 46, 48 (2d Cir. 2006) (quoting Hayut v. State Univ. of N.Y., 352 F.3d 733, 748, 750 (2d Cir. 2003)).

For the reasons discussed supra – that is, the nature, persistence, and frequency of the offensive conduct to which Plaintiff testified -- a reasonable jury could conclude that the conduct complained of was severe and pervasive; Defendant does not contend that the conduct was anything other than objectively offensive.  In terms of the effect on Plaintiff, there is evidence that Plaintiff's grades declined.  C.C.S. ¶¶247, 249.  She has seen a therapist to address school-related depression.  C.C.S.  ¶256.  Plaintiff's disciplinary record, while possibly viewed in Defendant's favor, may also reasonably be viewed as a consequence of harassment.   Plaintiff became depressed, lost sleep, and wanted to miss school.  C.C.S. ¶¶252-55; P.C.S.F. ¶¶ 249, 254, 255-57.  A reasonable jury could find that the events at issue did have a concrete, negative affect on Plaintiff's access to education.

**CONCLUSION**

15

To be sure, the record here is not overwhelmingly favorable to Plaintiff's ability to prove the elements of her prima facie case.  This decision is limited to the facts at bar, and represents careful adherence to the requirement that the facts must be viewed in the light most favorable to Plaintiff.  Having done so, the disputed and undisputed material facts, taken together, preclude the entry of judgment in Defendant's favor.  While being alert to the dangers of overextending the protections of Title IX in the context of peer-on-peer harassment, the court must also be mindful that those protections serve as more than empty promises.  An appropriate order will be entered.

BY THE COURT:


/s/ Joy Flowers Conti
Joy Flowers Conti
Chief Judge, U.S. District Court


Dated: November 22, 2016